**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ABL TITLE INSURANCE AGENCY, LLC, | Civil Action No.: 15-7534 (CCC-JBC) |
| Plaintiff, | **OPINION** |
| v. | |
| MAXUM INDEMNITY COMPANY, | |
| Defendant. | |

**CECCHI, District Judge.**

### I.   INTRODUCTION

Before the Court is a Motion to Dismiss the Complaint filed by Defendant Maxum Indemnity Company ("Defendant" or "Maxum"). [ECF No. 7.] Plaintiff ABL Title Insurance Agency, LLC ("Plaintiff" or "ABL") opposes the motion. [ECF No. 8.] The Court decides the motion without oral argument pursuant to Rule 78. Having considered the parties' submissions and for the reasons set forth below, the Court will deny Maxum's motion to dismiss.

### II.   BACKGROUND

The relevant facts are straightforward and undisputed. Maxum issued ABL a professional liability insurance policy, Policy Number PFP-6019265-04, covering the one-year period from May 19, 2015 through May 19, 2016 (the "Policy"). [Compl. ¶ 3.[1]] ABL duly paid the premium for the Policy. [Compl. ¶ 4.]

#### A.   The Policy

The Policy provides, in part, as follows:

---

[1] The Complaint can be found at ECF No. 1-1, as an exhibit to the Notice of Removal.

> [Maxum] will pay those sums that an "insured" becomes legally obligated to pay as "damages" because of a "wrongful act" in the rendering or failure to render "professional services" by any "insured" or by any person for whose "wrongful acts" an "insured" is legally responsible for.[2]

[Compl. ¶ 5, see also ECF No. 7-3 at Page 11 of 31.] The Policy also contains an endorsement titled "Title Abstractors, Title Insurance Agents, Settlement, Escrow and Closing Agents Additional Exclusions," which states, in relevant part:

> The following additional Exclusions are added to the policy.
>
> This insurance does not apply to nor shall [Maxum] have the duty to defend or indemnify any "claim" or "suit" arising out of or resulting from:
>
> . . .
>
> 3. Any damages arising out of the commingling, conversion, misappropriation or defalcation of funds or other property.[3]

[ECF No. 7-3 at Page 24 of 31.]

### B. Facts resulting in ABL's claim under the Policy

ABL was the closing agent for a residential real estate sale consummated on Friday, June 26, 2015. [Compl. ¶ 10.] The sellers received their portion of the sale proceeds by check at the closing on the afternoon of June 26, 2015. [Compl. ¶ 11.]

That same day, a third party ("the hacker") used an email address resembling, though not identical to, the sellers' attorney's email address to send an email to the buyer's attorney. [Compl. ¶¶ 12, 17.] In the email, the hacker (representing himself to be the sellers' attorney) purported to forward a message from one of the sellers requesting payment by wire transfer rather than by

---

[2] The Policy provides definitions for all of the words in quotations [e.g., Compl. ¶¶ 7-9].
[3] For ease of reference, the Court will refer to this Endorsement as "the conversion exclusion."

2

check. [Compl. ¶ 12.] The email also requested that the funds be wired to a corporate account rather than to the sellers' account. [Compl. ¶ 12.]

The buyers' attorney responded to the hacker requesting instructions for the wire transfer. [Compl. ¶ 13.] The hacker provided information necessary for the money to be transferred to a bank account maintained in the name of "Nat Jay Music & Ent LLC." [Compl. ¶ 13.] Upon receiving the instructions, the buyer's attorney forwarded the hacker's instructions to an ABL employee. [Compl. ¶ 14.] The ABL employee responded that she would not be able to transfer the money on that day, but would do so the following Monday morning. [Compl. ¶ 14.]

On Monday, June 29, 2015, the hacker (again representing himself to be the seller's attorney) emailed the ABL employee to check the status of the wire transfer. [Compl. ¶ 15.] The ABL employee the initiated a wire transfer in the amount of $579,360.48 from ABL's bank account to the Nat Jay Music & Ent LLC account. [Compl. ¶ 15.] The hacker absconded with a large portion of the money. [Compl. ¶ 16.]

It appears undisputed that the ABL employee did not follow standard and prudent wire transfer procedures. [*See* Compl. ¶ 15.] Examples of the ABL employee's failures include: (i) wiring the money to an account of a business entity rather than an account held in the name of the sellers; (ii) failing to confirm the wiring instructions using a separate means of communication (such as the telephone); and (iii) failing to note the difference between the hacker's email address and the sellers' attorney's email address. [Compl. ¶¶ 15, 17.] It is asserted that the wire transfer to the hacker would have been avoided had the ABL employee not made these mistakes.

As a result of this wire transfer, ABL has had insufficient funds in its bank account to cover disbursements from multiple real estate closings. [Compl. ¶ 18.] ABL has bounced checks to various third parties in the aggregate amount of $234,668.28. [Compl. ¶ 18.] Further, ABL owes

an aggregate of $344,692.20 (the balance of the $579,360.48) to various third parties for escrowed items, which ABL has insufficient funds to cover. [Compl. ¶ 20.] Each of these third parties has already made, or is anticipated to make, a claim for the funds owed to it from its respective closing. [Compl. ¶¶ 19, 20.] ABL has received multiple verbal and written demands for payment as well as two complaints filed with the New Jersey Department of Banking and Insurance and a complaint filed with the New Jersey Superior Court. [Compl. ¶ 22.]

On August 12, 2015, ABL provided Maxum with a formal claim requesting coverage under the Policy. [Compl. ¶ 24.] After receiving ABL's request for coverage, Maxum requested certain additional information, which ABL provided on August 17, 2015. [Compl. ¶ 25.] Maxum did not respond by either approving or denying ABL's claim for coverage. [Coml. ¶¶ 26-27.] On September 8, 2015, ABL advised Maxum that if it did not hear back from Maxum by September 11, 2015, ABL's understanding would be that the claim was denied. [Compl. ¶ 27.] Maxum did not respond. [Compl. ¶ 27.]

### C. Procedural History

On September 15, 2015, ABL filed the Complaint in the Superior Court of New Jersey, seeking declaratory relief and damages for breach of contract. [Compl. at 1, 5-7.] On October 15, 2015, Maxum filed a Notice of Removal under 28 U.S.C. § 1441, removing the action to this Court on October 15, 2015 on the basis of diversity jurisdiction under 28 U.S.C. § 1332. [ECF No. 1 ¶¶ 1-5.] On November 6, 2015, Maxum filed the instant Motion to Dismiss. [ECF No. 7.]

### III. LEGAL STANDARD

A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When evaluating the sufficiency of a complaint,

4

Courts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).

## IV. DISCUSSION

Maxum moves to dismiss the Complaint on the basis that the conversion exclusion bars ABL's claim for coverage under the Policy. In its moving papers, Maxum argues that the ABL employee who wired the money committed the conversion that excludes ABL's coverage under the Policy. [ECF No. 7-1.] In its reply papers, Maxum shifts gears and argues that it was the hacker who committed the conversion that excludes ABL's coverage under the Policy. [ECF No. 12.] Either way, based on the specific language of the conversion exclusion in the Policy, Maxum's argument appears to request that this Court summarily determine that ABL's claim for coverage arises out of a conversion.

"Conversion" is a term used to refer to a common law tort consisting of wrongfully exercising control over another's property without authorization and to the exclusion of the property's owners.[4] *See Chicago Title Ins. Co. v. Ellis*, 409 N.J. Super. 444, 456 (App. Div. 2009). The elements of common law conversion under New Jersey law[5] are (1) the existence of property, (2) the right to immediate possession thereof belonging to a person, and (3) the wrongful interference with that right by a different person. *Corestar Int'l PTE. Ltd. v. LPB Communs., Inc.*, 513 F. Supp. 2d 107, 127 (D.N.J. 2007). At this point in the litigation, the Court cannot dispose

---

[4] "Criminal conversion" is a term that has been used to refer to the crime of embezzlement, which consists of "the intentional and fraudulent appropriation of the property or money of another by a person into whose hands it has lawfully come or into whose hands it has been entrusted." *State v. Hubbs*, 70 N.J. Super. 322, 329 (App.Div. 1961). On the facts alleged in this case, there does not appear to be embezzlement.

[5] Both parties cited New Jersey law in their briefs. Therefore, for purposes of deciding this motion, the Court assumes without deciding that New Jersey law applies.

5

of this matter on the basis of what has been presented regarding the conversion exclusion and the facts alleged.

As ABL points out in its opposition papers, Maxum cites cases that support the undisputed proposition that policy exclusions are allowed in insurance policies. [*See* ECF No. 8 at 10.] However, the facts of this case appear to be distinguishable from the cases cited by Maxum, where the Court was able to determine that the policy exclusion applied. *See Light v. Nat'l Union Fire Ins. Co.*, 2008 U.S. Dist. LEXIS 100732 (D.N.J. Dec. 11, 2008) (determining that one count of a complaint that sounded in tort arose out of "the alleged breach of contract that forms the heart of the [complaint]"); *see also 3039 B St. Assocs. v. Lexington Ins. Co.*, 483 F. App'x 693, (3d Cir. 2012) (determining on summary judgment that an exclusion applied where the question was whether the employer had "entrusted" the property to the employee who stole the property).

Here, at this early stage of the proceedings, this Court is not in a position to conclude whether the policy exclusion applies. The language of the conversion exclusion appears to require a legal determination that the tort of conversion occurred. At the very least, it requires this Court to determine that ABL's claim for coverage "arises out of" a conversion by either the ABL employee or the hacker. ABL, however, argues that its claim for coverage arises not out of conversion but rather out of its own employee's negligence in initiating a wire transfer without following standard and prudent procedures. [*See* ECF No. 8 at 1-2.] With respect to the ABL employee's alleged conversion, ABL argues that its employee could not have converted funds because ABL was authorized to issue money to sellers at the direction of buyers' attorneys, which is the very reason ABL holds funds in the first place. [ECF No. 8 at 9.] Similarly, with respect to the hacker, it is unclear which (if any) person had the right to immediate possession of property

with which the hacker wrongfully interfered. In any event, these determinations are not appropriate at this juncture.

Maxum's stated premise for its motion is that "[a] motion to dismiss is the proper procedural vehicle where it is clear from the factual allegations that a policy exclusion applies to bar any coverage." [ECF No. 7-1 at 4.] As the policy exclusion at issue here is dependent on a question of law with underlying questions of fact (*i.e.*, whether the tort of conversion occurred), it cannot be clear from the factual allegations that the conversion exclusion applies to bar coverage in this case. Thus, Maxum's motion must be denied.[6]

## V.   CONCLUSION

For the reasons provided above, the Court will deny Maxum's Motion to Dismiss. An appropriate order accompanies this Opinion.

Dated: June 30, 2016

                                                              CLAIRE C. CECCHI, U.S.D.J.

---

[6] The Court notes that the parties discussed issues of contract interpretation in their briefing. Specifically, the parties each cited case law regarding the law of interpreting contracts, insurance contracts, policy exclusions, and specific phrases in contracts (*e.g.*, "arising out of"). At this stage of the proceedings, however, the Court need not reach the issue of contract interpretation.